# IN THE UNITED STATES DISTRICT COURT

## FOR THE

## MIDDLE DISTRICT OF FLORIDA

## FORT MYERS DIVISION

| | |
|---|---|
| **Anthony M. Jordan** )<br>Plaintiff, )<br> )<br>v. )<br> )<br> )<br>**The United States Department of** )<br>**Education** )<br>  And )<br>**The University of South Florida** )<br>Defendants, Jointly and Severally )<br>_____/ | Case No: 2:17.cv.683.FtM99cm<br><br>Hon.:_____ |

## PARTIES TO THE ACTION

The Plaintiff(s):

Anthony M. Jordan
242 SW 43rd Ter
Cape Coral, FL 33914
239-549- 3278


The Defendant(s):

The United States Department of Education
Default Resolution Group
P.O. Box 5609
Greenville, TX 75403-5609
1-800-621-3115

and

The University of South Florida
4202 E. Fowler Ave.
Tampa, FL 33620

## BASIS FOR JURISDICTION

Plaintiff, Anthony M. Jordan resides in the District. The Plaintiff's complaint alleges several constitutional rights violations against the plaintiff and by the defendant, United States Department of Education, hereinafter referred to as ED, which are constitutional issues and the Federal District Court is the proper venue. Plaintiff's complaint against The University of South Florida, hereinafter referred to as USF, arises from actions that originated in Ft. Myers, Florida and complaints against both ED and USF have intertwined, overlapping claims, therefore the Federal District Court is the proper venue, and the consolidation of both cases is appropriate for the Court to dispense equitable relief. Damages caused to the plaintiff by the defendants are ongoing.

## COMPLAINT

COMES NOW Plaintiff Anthony M. Jordan who brings this suit against defendants United States Department of Education and the University of South Florida and states that:

### History of the Case

1. Plaintiff enrolled in the Ft. Myers campus of USF College of Business in January of 1977 and completed the requirements for a bachelor's degree in December, 1979.

2. Plaintiff enrolled in the graduate school of Business in January, 1980 after securing student loans, a total of $10,000 and completed the requirements for a master's degree in December, 1981.

2

3. Plaintiff was not able to secure suitable employment due to the economic conditions of 1982 and re-payment of the loans eventually went into default.

4. Once USF was apprised of the default they put a permanent hold on the release of plaintiff's official transcripts. That hold has remained in effect from that time in 1983 through, at least November of 2015.

5. ED became holder of the notes during the period 8/6/84-3/27/85 but never attempted to enforce collection until July 2001.

6. Since that time ED has taken $ 17,609.89 through wage garnishments and Federal treasury offsets.

**Count I**

This action alleges violations by ED with respect to the plaintiff's constitutional rights.

7. Defendant by means of administrative wage garnishments and offset of social security payments, has taken plaintiff's money in violation of the plaintiff's 4th amendment right to "unreasonable search and seizure" and the 5th amendment right to "due process."

8. Plaintiff asserts these claims on the basis of a particular statute of limitations on enforcement of the debt, specifically:

*Title 20, Sect. 1091a, (2) was in effect: "a guaranty agency which has an agreement with the Secretary (of the Department of Education) under 1078(c) of this title may file suit for the collection of the amount due from a borrower on a loan made under part B of this subchapter during a period of time extending at least until a date 6 years (exclusive of periods during which the State statute of limitations period otherwise*

*applicable to the suit would be tolled under State law) after the date such guaranty agency reimburses the previous holder of the loan for its loss on account of default of the borrower;"*

9. On 3/28/91 a period of 6 years and 1 day had lapsed from the time that the guaranty agency paid the claim to the holder of the notes in question. *P.L. 102-26 was not signed into law until 4/9/91, a period 12 days after the existing statute which P.L. 102-26 had sought to abolish, had run out of the time allowed for enforcement of the notes in question.* During this 12 day period the guaranty agency, the Department of Education, and the United States was barred by law from any further attempt to collect or enforce collection of this debt.

10. Plaintiff has maintained his contention that P.L. 102-26 was enacted ***Ex Post Facto*** of the period in which the Department of Education's right to enforce collection of the debt in question had been barred by law. This particular law does not have to be declared ex post facto, in this instance, it merely has to have the same "effect" of being ex post facto:

*United States Constitution, Article I, section 9: "No bill of attainder or ex post facto law shall be passed."*

11. U.S. Supreme Court Citation:

*In Miller v. Florida, 482 US 423, 107 S Ct 2446, the Court identified two critical elements that must be present for a statute to fall within the Constitutional prohibition against ex post facto laws: 1) The law must be retroactive, that is, it must apply to events occurring before its enactment, and 2) it must disadvantage the person affected by it; a law is retrospective if it changes the legal consequences of acts completed before its*

*effective date. Also in Miller v. Florida, supra, the Court declared that for a law to be ex post facto, in violation of the Federal Constitution (Art I, Sec. 9, cl 3; Art I, Sec. 10, cl 1)* **it must be more onerous than the prior law.**

### Count II

This action alleges breach of contract on the part of defendant USF.

12. Defendant USF has maintained a "hold" on plaintiff's official transcripts for plaintiff's entire remaining work life since graduating December, 1981. Upon enrollment in an academic program, every student makes a bi-lateral contract with the school / university. The student agrees to successfully complete the requirements of a particular field of study, and in return, the school agrees to award the student with certification of that achievement, i.e. a certificate or a degree.

13. This very act of placing a perpetual hold on plaintiff's academic transcripts, committed by USF, impeded and prohibited plaintiff's ability to benefit. There was no legal obligation on the part of USF to withhold plaintiff's transcripts to facilitate the Department of Education's collection of a loan debt.

14. USF, working in conjunction with ED, impeded the very performance that would be needed to repay the debt. Additionally, plaintiff's ability to attain a higher level of education without official transcripts, for example, a law degree, was forever extinguished.

15. The loans that are the basis of this complaint were originated at the onset of plaintiff's enrollment in graduate school, but the transcript hold was also placed on plaintiff's undergraduate degree, as well.

16. Plaintiff has suffered irrepairable damage, due to the fact that any and all employment

requiring official proof of the level of plaintiff's academic achievement was never available to plaintiff, extremely limiting plaintiff's lifetime employment opportunities.

17. Statistics show an expected lifetime earnings for an individual with a master's degree to be in the range of $1.8 million dollars. Plaintiff's last social security statement reveals earnings since graduate school in the neighborhood of $472,000. It must be concluded that that shortfall, in part, is attributed to plaintiff's limited employment opportunities, when it was necessary to provide official proof of academic achievement.

### Count III

This action alleges conversion on the part of USF.

18. The actions (policies) of USF are ex delicto for the very reason that the university was in possession of plaintiff's personal, intellectual property, rightfully, but they retained it without right.

19. This detrimental action on the part of defendant, USF constitutes a violation of intellectual property laws, as well.

### Count IV

This action alleges negligence on the part of defendant ED, and contributory negligence on the part of USF.

20. Involuntary payment amounts were being taken by ED through an administrative wage garnishment since 2001. ED failed to notify defendant USF, and the transcript hold remained in effect. The excessive delay on the part of ED between the time the department attained the

debt and the time it attempted to enforce it, enforcement should be barred, simply based upon the principle of *Laches*.

21. USF never attempted to verify that payments were being received by ED, thereby removing the transcript hold.

22. The combination of the above acts economically deprived plaintiff of obtaining gainful employment that would result in higher lifetime earnings.

WHEREFORE, Plaintiff seeks restitution from the United States Department of Education in an amount no less than $17,608.89 plus any exemplary damages that this honorable court may deem fit and proper, AND, Plaintiff seeks remunerative compensation for damages sustained by defendant University of South Florida's willful deprivation of economic employment opportunity toward plaintiff in an amount of $250,000, or such amount as this honorable court deems fair and just.

_____  Date: 12-11-17

Anthony M. Jordan, Plaintiff, in pro per